UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEREMY DIDIER,

                Plaintiff,

v.                                       Case No. 13-2046-JWL

ABBOTT LABORATORIES, et al.,

                Defendants.

## ORDER

The plaintiff, Jeremy Didier, brings this employment discrimination suit against her former employers, alleging defendants[1] discriminated against her on the basis of gender and religion, interfered with her rights under the Family Medical Leave Act ("FMLA"), and retaliated against her.[2] Plaintiff seeks recovery of lost wages and benefits and other monetary damages, attorneys' fees, and equitable relief, including reinstatement. The matter is currently before the undersigned U.S. Magistrate Judge, James P. O'Hara, on plaintiff's motion to compel discovery and for sanctions (**ECF doc. 64**). Plaintiff seeks to compel defendants to conduct a "sufficient search" and produce all

---

[1] As used in this order, "defendants" refers to Abbott Laboratories, Abbott Laboratories, Inc., Abbott Products, Inc., and Abbvie, Inc.

[2] *See* ECF doc. 1.

documents and information previously requested in certain discovery requests.[3]  Plaintiff also seeks sanctions for defendants' alleged "failure to timely disclose relevant and responsive information within Defendants possession and control."[4]  Defendants assert that they have conducted a reasonable search, produced all responsive documents, and supplemented their discovery responses in good faith.  Therefore, defendants assert plaintiff's motion must be denied.  For the reasons discussed below, plaintiff's motion is granted in part and denied in part.

## I.    Procedural Requirements to Confer

First, defendants argue plaintiff's motion should be denied because plaintiff failed to meet and confer with defendants regarding the specific issues she raises in this motion to compel.  The Federal Rules of Civil Procedure and this district's local rules require a moving party to confer with opposing counsel about the discovery dispute before filing a motion to compel.  Fed. R. Civ. P. 37(a)(1) requires that a motion to compel include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  This district's local rules expand on the movant's duty to confer, stating that "a 'reasonable effort' to confer means more than mailing or faxing a letter to the

---

[3] Specifically, the matters in dispute concern Interrogatory No. 16 in plaintiff's first set of interrogatories, and Requests for Production Nos. 1, 12, 17, 25, and 31(a) in plaintiff's first request for production of documents.

[4] ECF doc. 66 at 9.

opposing party."[5] It requires the parties in good faith to "converse, confer, compare views, consult and deliberate, or in good faith attempt to do so."[6]

In this case, the parties have exchanged detailed correspondence aimed at resolving the instant discovery dispute without judicial intervention. Plaintiff has made a reasonable effort to confer with defendants regarding the completeness and adequacy of defendants' discovery responses. Therefore, the court finds plaintiff has satisfied Fed. R. Civ. P. 37(a)(1) and D. Kan. R. 37.2.

## II.    Background

On June 5, 2012, plaintiff's counsel sent a preservation letter to defendants' in-house counsel, instructing defendants to preserve all evidence regarding plaintiff's employment.[7] Seven months later, plaintiff filed this lawsuit.[8] As earlier indicated, the present dispute stems from defendants' responses to plaintiff's first set of discovery requests, which were served on July 11, 2013.[9] Defendants filed their responses to plaintiff's discovery requests on August 12, 2013.[10] The parties met and conferred regarding defendants' responses in early September 2013 and defendants agreed, despite

---

[5] D. Kan. R. 37.2.

[6] *Id.*

[7] *See* ECF doc. 65-1 at 3.

[8] ECF doc. 1.

[9] ECF doc. 21.

[10] ECF doc. 28.

their previously served objections, to supplement their previous discovery responses and production.[11]   Plaintiff asserts defendants "repeatedly supplemented their disclosures, producing additional documents on August 13, September 20, October 14, October 22, October 23, October 24, and October 30, 2013."[12]

On October 28, 2013, plaintiff deposed her former supervisor, Byron Rex.  Mr. Rex testified that text messaging is one of the ways he communicates with his employees. Mr. Rex also testified that he received a new company phone in early 2013.  As a result, the text messages on his previous company phone are no longer available.

On November 7, 2013, defendants served an amended answer to plaintiff's first set of interrogatories.  Plaintiff claims that defendants identified two key decision-makers with respect to plaintiff's termination for the first time in this amended response to Interrogatory Nos. 1 and 2.  In addition, defendants produced documents relating to an investigation of plaintiff's supervisor.  This supplemental production was made only one day in advance of a deposition.

On November 8, 2013, plaintiff deposed defendants' corporate representative, CeCe LaFleur.  Plaintiff asserts that defendants produced additional documents on November 11, 15, and 20, 2013, many of which were relevant to issues on which Ms. LaFleur had been designated as a corporate representative.

---

[11] *See* ECF doc. 65-4 at 4.

[12] ECF doc. 65 at 5.

Finally, on November 26, 2013, defendants produced two informal records of warning to Mr. Rex, for failure to follow company policy and for abuse of a company credit card. Plaintiff argues these documents were relevant to the depositions of Mr. Rex and two corporate representatives but were not produced until after their depositions.

Defendants respond that the circumstances giving rise to this motion result largely from plaintiff's failure to comply with this court's scheduling order to promptly propose electronic discovery custodians and search terms relating to ESI production.[13]  In the court's April 16, 2013 scheduling order, the undersigned confirmed that "[p]laintiff will provide defendants with a list of custodians, search terms, and time restrictions as soon as possible. Counsel will confer and agree upon the list of custodians, search terms and time restrictions, which will be used in conducting searches of defendants ESI. Defendants will produce responsive emails to plaintiff …"[14]  Three months later and without proposing a custodian list or search terms, plaintiff served her first set of discovery requests. The parties did not meet and confer to agree upon the list until September 9, 2013. As a result of this delay, the parties agreed to extend discovery from August 30, 2013 to October 31, 2013. Thereafter, defendants engaged in ESI collection and review and started producing responsive e-mails on October 17, 2013. Subsequently, discovery was extended until December 6, 2013.

---

[13] *See* ECF doc. 71.

[14] ECF doc. 17.

## III.    Motion to Compel

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."  However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."[15]  When a party fails to make disclosure of discovery, the opposing party may file a motion to compel.  The proponent has the burden of proving the answers to their discovery requests are incomplete, inadequate, or false.[16]

Plaintiff asserts defendants have made no real effort to conduct a proper and thorough search of their records with respect to the documents requested, especially with respect to Interrogatory No. 16 and Requests for Production Nos. 12, 17, 25, and 31(a). Plaintiff emphasizes the fact that defendants produced new documents immediately prior to several depositions, suggesting the deponents themselves were never asked to produce responsive documents.  Plaintiff "believes there are likely other documents related to

---

[15] Fed. R. Civ. P. 26(b)(1).

[16] *Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D. Colo. 1986); *see also Daiflon Inc. v. Allied Chemical Corp.*, 534 F.2d 221, 227 (10th Cir. 1976).

other investigations that have not been disclosed."[17]  Therefore, plaintiff asks the court to order defendants to "conduct a thorough and complete search and produce any additional documents, including emails, responsive to the referenced interrogatory and requests for production."[18]

Defendants respond that plaintiff's "mere 'belief'" that additional documents must exist is not enough to grant plaintiff's motion to compel.[19]  Defendants assert that they have conducted reasonable searches to locate and produce responsive documents, including undergoing an extensive ESI search that included 22 custodians and four pages of search terms that has resulted in the production of 8,847 pages of documents. Additionally, defendants certify that, "after conducting a reasonable search, they have produced, subject to their asserted objections, any responsive documents or information located" in response to the disputed discovery requests.

Plaintiff focuses on defendants' recently produced informal records of warning to Mr. Rex.[20]  Defendants produced these documents following a deposition of Marty Comer.  Mr. Comer testified that these two documents were on his computer hard drive. Plaintiff asserts it is "inconceivable" that the only copies of these documents were on Mr. Comer's hard drive.  Plaintiff argues these documents were in defendants' possession and

---

[17] ECF doc. 66 at 9.

[18] *Id.*

[19] ECF doc. 71 at 19-20.

[20] ECF docs. 65-8 and 65-9.

control the entire time, and should have been available through defendants' HR files or Mr. Rex's personnel file.

Defendants assert that these documents were either generated in 2009, when Mr. Rex was employed by Solvay Pharmaceuticals, Inc. ("Solvay"), or issued by Solvay HR pursuant to Solvay's policies. Defendant Abbott Laboratories did not acquire Solvay until 2010. Therefore, defendants assert that no Solvay HR informal warning documents for Mr. Rex, or any other Solvay disciplinary documents are contained in the employment files maintained by defendants for Mr. Rex. Defendants further explain that the records were not maintained in their HR, ER, OEC or Global Security files, that no other defendant actively maintains those files, and that after conducting a reasonable search defendants have located no additional responsive documents relating to any investigation of Mr. Rex within defendants' possession, custody, or control which have not been previously produced to plaintiff.

The court cannot compel a party to produce documents that do not exist or not in that party's possession, custody, or control.[21] Plaintiff has not provided the court with information sufficient to lead the court to question the veracity of the defendants' statement that no additional responsive documents exist. Therefore, the court has no basis upon which to compel defendants to produce any additional documents in response

---

[21] *Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan. 2004). *See* Fed. R. Civ. P. 34 (imposes a duty on the responding party to produce documents that are in the "possession, custody or control of the party); *see also Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501 (D. Kan. 2001).

to the disputed requests. Nonetheless, based on defendants' pattern of producing documents prior to or immediately following depositions, the court will require defendants to serve supplemental written answers to plaintiff's discovery requests, certifying, with no equivocation whatsoever, that no other responsive documents are in their possession, custody or control. These supplemental answers shall be served by **January 28, 2013**.

## IV.    Motion for Sanctions

Pursuant to Fed. R. Civ. P. 37(c) and (b)(2), plaintiff moves for sanctions for defendants' failure to timely disclose relevant and responsive information. Rule 37(b)(2) addresses sanctions for failure to comply with a *court order*. But plaintiff fails to cite and the court is unaware of any discovery court order that defendants violated. Therefore, the court will only address sanctions under Rule 37(c), except to the extent the court decides to impose other appropriate sanctions under Rule 37(b)(2) as provided for in Rule 37(c)(1)(C).

Rule 37(c) provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified* or is *harmless*." Under Fed. R. Civ. P. 26(e)(2), a party is under a duty seasonably to amend discovery responses "if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery

process or in writing." In addition to or instead of the sanctions outlined above, the court may: (a) order payment of the reasonable expenses, including attorney's fees, caused by the failure; (b) inform the jury of the party's failure; and (c) impose other appropriate sanctions, including any of those listed in Rule 37(b)(2)(A)(i)-(vi).[22] The court should diligently apply sanctions under Rule 37 not only to penalize those who have engaged in sanctionable misconduct but also to deter those who might be tempted to such conduct in the absence of such a deterrent.[23] The court is afforded wide discretion in choosing an appropriate sanction.[24]

Plaintiff asks for the following sanctions: (1) that defendants not be allowed to use any of the documents produced after November 7, 2013 to support their affirmative defenses or oppose plaintiff's claims[25]; (2) that defendants not be allowed to vary or change their testimony to defendants' advantage based on any documents produced after November 7, 2013; (3) that the court inform the jury that the informal records of warning

---

[22] Fed. R. Civ. P. 37(c)(1)(C).

[23] *Starlight Intern. Inc. v. Herlihy*, 186 F.R.D. 626, 647 (D. Kan. 1999) (citing *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1555 (10th Cir. 1996)).

[24] *Cardenas v. Dorel Juvenile Group, Inc.*, No. 04-2478, 2006 WL 1537394, at *5 (D. Kan. June 1, 2006) (citing *Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005)).

[25] However, during the pretrial conference on January 3, 2014, when this motion was discussed, plaintiff stated she should be allowed to use any late-produced documents that might help her case. No legal authority has been cited for this sort of "one-way only" use of evidence.

to Mr. Rex[26] were withheld and not timely disclosed to plaintiff; (4) that defendants not

be allowed to offer the testimony of Laura Hennessey or Kristyn Gamoke in support of

their case; (5) a spoliation instruction from the court with respect to the informal records

of warning to Mr. Rex; (6) a spoliation instruction regarding Mr. Rex's destruction of his

text messages; and (7) any other sanction or order that the court finds appropriate.[27]

Pursuant to Rule 37(c), sanctions are appropriate unless defendants' failure to

seasonably amend its discovery responses is substantially justified or is harmless.

Whether a Rule 26(e)(1) violation is substantially justified or is harmless is entrusted to

the broad discretion of the court; however, "a district court need not make explicit

findings concerning the existence of a substantial justification or the harmlessness of a

failure to disclose."[28]   Although plaintiff's supporting briefs do not provide any

meaningful analysis in this regard (*see* ECF docs. 65 & 73), the Tenth Circuit has held

the following factors should guide the district court's discretion: "(1) the prejudice or

surprise to the party against whom the testimony is offered; (2) the ability of the party to

---

[26] ECF docs. 65-8 and 65-9.

[27] In plaintiff's reply in support of her motion for sanctions (ECF doc. 73), plaintiff indicated that she is withdrawing her requests for spoliation or other instructions by the court regarding late-produced documents.  Therefore, the court will not address these requests in its order.

[28] *Umbenhower v. Copart, Inc.*, 222 F.R.D. 672, 675 (D. Kan. 2004) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the non-moving party's bad faith or willfulness."[29]

Applying these standards to the case at bar, the court finds that defendants have shown that their supplementations of discovery responses were substantially justified and harmless. Although the court fully appreciates plaintiff's frustration with documents being produced *after* depositions are taken, and although some lawyers engage in the unprofessional (and sanctionable) litigation tactic, nothing in the record here persuades the court that defendants' alleged delays in producing documents were willful, knowing, or in bad faith.

For example, with respect to defendants' November 7, 2013 production, there is no evidence that defendants were trying to conceal Ms. Hennessey or Ms. Gamoke as individuals having input into the decision to terminate plaintiff. Defendants' initial October 17, 2013 ESI document production included documents identifying both individuals as having approved the recommendation to terminate plaintiff.[30] The fact that plaintiff's counsel referred to this information during Ms. La Fleur's November 8, 2013 deposition belies any claim that plaintiff was unable to review and use the information because of the delayed production.

---

[29] *Id.* (citing *Jacobsen*, 287 F.3d at 953 (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993)).

[30] *See* ECF doc. 71-6.

Furthermore, the November 11, 2013 production of one page with four sentences was obviously inadvertently missed by defendants. The content of those four sentences and the circumstances surrounding their production shows that the delayed production was substantially justified and harmless.

Plaintiff claims that she was prejudiced by defendants' November 15, 2013 supplemental production of text messages from Mr. Rex's cell phone. Because plaintiff received the text messages after Mr. Rex's deposition, plaintiff asserts she was prejudiced by her inability to use that responsive information to question Mr. Rex. In response, defendants explain that the delay in production was due to technical issues and offer to allow plaintiff to depose Mr. Rex about the text messages to cure any purported prejudice. However, plaintiff fails to explain how she was specifically harmed by this late production. Plaintiff makes no effort to outline what questions she would have asked Mr. Rex or what relevant information was missing that she needed to depose Mr. Rex to her satisfaction. Therefore, the court does not find defendants' delayed production of text messages is a basis for sanctions.

Defendants produced three performance management documents regarding James Kenney on November 20, 2013. In preparing for the deposition of Sharon Larson, a 30(b)(6) witness for defendants, defendants discovered for the first time that these three documents were referenced by case number but were not actually included in the investigation file. Defendants produced the documents before Ms. Larson's deposition and plaintiff was able to depose Ms. Larson regarding the investigation into Mr.

Kenney's allegations. Based on the foregoing, the court finds defendants' late production of these three documents was substantially justified and harmless.

Defendants also produced eight e-mails relating to the investigation of plaintiff's misconduct that led to her termination on November 20, 2013. Plaintiff asserts that defendants should not be allowed to rely on these e-mails to vary their deponents' testimony or to use them in support of any motion for summary judgment. Defendants explain that they inadvertently omitted the folder containing these e-mails and discovered this omission in mid-October 2013. Thereafter, defendants worked with their IT department to process and review the e-mails. Therefore, it appears defendants were aware of these e-mails before the November 7, 2013 deposition of Ms. LaFleur. However, defendants did not review these documents with Ms. LaFleur, disclose this fact to plaintiff, or produce the documents to plaintiff prior to Ms. LaFleur's deposition.

Finally, on November 26, 2013, defendants produced three Solvay employment policies and two informal warnings issued to Byron Rex. The informal warnings were located on Marty Comer's computer hard drive following his deposition. Defendants assert that they previously asked Mr. Comer to search for and provide responsive documents but Mr. Comer did not recall having those documents *before* his deposition. Nonetheless, defendants argue plaintiff was not harmed by the timing of this production because Mr. Comer was re-deposed on December 2 and 5, 2013.

Again, the court understands plaintiff's frustration with defendants' delayed production of documents. But the court is wholly unpersuaded that the drastic sanctions

requested by plaintiff are appropriate at this time. Simply stated, plaintiff is asking for far too much based on far too little. The steps already taken by defendants to locate responsive documents and their continued effort to work with plaintiff and supplement their production, if possible, appear to be sufficient. In consideration of the foregoing, the court denies the specific relief plaintiff has requested. However, in the interest of fairness, the court will allow plaintiff to re-depose Ms. LaFleur with respect to the eight e-mails produced on November 20, 2013 since plaintiff may have been prejudiced by her inability to question Ms. LaFleur regarding the content of those e-mails. The parties shall bear their own costs associated with this deposition.

The parties are strongly encouraged to communicate and cooperate with each other before involving the court again. In the future, the court will not hesitate to impose sanctions on anyone who engages in conduct that causes unnecessary delay or needless increase in the costs of litigation, including frivolous discovery motions.

IT IS THEREFORE ORDERED:

1. Plaintiff's motion to compel and for sanctions **(ECF doc. 64)** is granted in part and denied in part.

2. Defendants shall serve supplemental written answers to plaintiff's discovery requests certifying that no other responsive documents are in their possession, custody, or control, by **January 28, 2013**.

3.     The specific relief plaintiff requests is denied.  However, plaintiff may re-depose Ms. LaFleur with respect to the eight e-mails produced on November 20, 2013. But the parties shall bear their own costs associated with this deposition.

4.     If plaintiff decides to depose Ms. LaFleur, a notice of deposition shall be filed by **January 28, 2014** with the deposition scheduled on or before **February 14, 2014**.

Dated January 21, 2014, at Kansas City, Kansas.


s/ James P. O'Hara
James P. O'Hara
U. S. Magistrate Judge